United States Court of Appeals
Fifth Circuit

**F I L E D**

June 22, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-30723

UNITED STATES OF AMERICA,

Plaintiff - Appellee.

VERSUS

CHAD EDWARD KEITH,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before JOLLY, DAVIS, and JONES, Circuit Judges.

W. EUGENE DAVIS:

Keith challenges the district court's denial of his motion to suppress. Keith's appeal presents the question of whether a warrantless, non-consensual search of the defendant's home while he was under supervised probation pursuant to a Louisiana state court sentence, was constitutional when the search was supported by reasonable suspicion. Keith argues that the Supreme Court cases of Griffin v. Wisconsin, 483 U.S. 868 (1987) and United States v. Knights, 534 U.S. 112 (2001) are distinguishable because unlike

Louisiana, in both states where the searches were conducted in those cases, the probationer either agreed to a search as a written condition of probation or a state regulation authorized a warrantless search by a probation officer upon reasonable suspicion. Because Louisiana courts authorize searches of a probationer's home based on reasonable suspicion, we conclude that Griffin and Knights control in this case and the district court correctly denied Keith's motion to suppress.

I.

In November 1999 Keith constructed and planted five homemade explosive devices throughout his high school in Coushatta, Louisiana. At least one of the devices exploded and destroyed a portion of a school bathroom. He later pled guilty to one count of possession of a destructive device, was sentenced to a suspended sentence of two years, and was placed on five year supervised probation which began in July 2000. One of his conditions of probation prohibited him from possessing a firearm, destructive device, or any other dangerous weapon.

In May 2002 the Red River Parish Sheriff's Office called Keith's probation officer, Alvie Myers, and advised Myers that they had received information from a local building supply retailer (who was aware of Keith's involvement in planting bombs in his school) that Keith had recently purchased two five-inch long and one-and-a-quarter-inch diameter steel pipe nipples and four one-and-a-quarter-inch end caps, materials commonly used to construct pipe

2

bombs. Due to Keith's history of making and detonating pipe bombs, Agent Myers called his supervisor and advised him that he planned to search Keith's home. Because Agent Myers suspected that explosives would be discovered and because he lacked training necessary to deal with explosives, Agent Myers called the Bureau of Alcohol, Tobacco and Firearms(ATF) and asked for assistance in his search.

Agent Myers understood that under Louisiana law he had the authority to search a probationer's home if he had reasonable suspicion that the probationer had violated or was about to violate a condition of probation. Possession of destructive devices was a violation of Keith's probation. Agent Myers also believed that the information provided him by law enforcement authorities that Keith had purchased material commonly used to build and detonate pipe bombs constituted reasonable suspicion of Keith's violation of his probation.

Later that day Agent Myers proceeded to Keith's home to conduct the search. He was accompanied by another probation agent, two agents from the ATF, two members of the State Police Hazardous Materials Squad, and a bomb expert from the Bossier City Fire Department. The two probation officers went to the house first and asked Keith and two other individuals with him to come outside. Then the other agents and law enforcement officials entered the residence to search for bombs or bomb-making materials. Agent Myers never asked nor obtained permission from Keith for the

3

search.

During the search, bomb-making materials were found. This included bomb-making magazines, wires and connections, stainless steel pipe and nipples, nails wrapped together in duct tape, and an infrared control box with several toggle switches on it. No assembled bombs, gun powder, or fuses were found at that time.

Keith initially explained his possession of the pipe and nipples as material he needed to repair his wells. Agent Myers concluded that this explanation made no sense and arrested Keith for violating his probation by lying to his probation officer.

A short time later Keith's father arrived at the house and Agent Myers gave him permission to speak to Keith. After their conversation Keith told Agent Myers that black powder and a fuse were in the house and showed him where they were. Keith then explained to the Fire Department bomb expert how he had made a bomb. Also one of Keith's companions at the scene told the officers that Keith had thrown three bombs into a pond located on private property nearby. The next day after receiving permission from the land owner, the officers drained the pond and found three bombs which they confiscated.

The grand jury returned a three count indictment charging Keith with possession of a destructive device in violation of 26 U.S.C. §§ 5822, 5861(c), and 5871; possession of an unregistered weapon in violation of 26 U.S.C. §§ 5822, 5861(d), and 5871; and making a destructive device in violation of 26 U.S.C. §§ 5822,

4

5861(f), and 5871.  Keith filed a motion to suppress the evidence seized as a result of the search of his residence and statements he made during the search.  A magistrate judge conducted a hearing on the motion and recommended that Keith's motion be denied.  After addressing Keith's objections to the magistrate judge's report and recommendations, the district court agreed with the magistrate judge's recommendations and denied Keith's motion to suppress. Keith then entered a conditional plea of guilty to possession of a destructive device and reserved his right to appeal the district court's denial of his motion to suppress.

## II.

### A.

The sole question in this appeal is whether Agent Myers's warrantless search of Keith's home violated the Fourth Amendment. Keith argues first that the district court erred in accepting the government's argument that a warrantless search of a probationer's home was justified based on nothing more than a probation officer's reasonable suspicion that the probationer had engaged in conduct that had violated or was about to violate the terms of his probation.  He  argues further that even if the search were justified based on reasonable suspicion, the district court erred in finding that the facts provided to Agent Myers were sufficient to serve as a basis for such reasonable suspicion.

In reviewing the denial of a motion to suppress this court reviews finding of fact for clear error while the ultimate

conclusion as to whether the Fourth Amendment has been violated is reviewed *de novo.* Ornelas v. United States*,* 517 U.S. 690, 699 (1996).

B.

The briefs in this case properly focus on two Supreme Court cases which specifically deal with the question of whether probation officers may conduct warrantless non-consensual searches of probationers' homes on the basis of reasonable suspicion. In both cases the Court concluded that such searches were permissible under the Fourth Amendment. Griffin v. Wisconsin, 483 U.S. 868 (1987); United States v. Knights, 534 U.S. 112 (2001). The government contends that these two cases control and require us to affirm the ruling of the district court. Keith on the other hand contends that both cases are distinguishable because in those cases --unlike this case--there was either a written condition of probation permitting such a search based on reasonable suspicion or a state regulation authorizing a warrantless search based on reasonable suspicion.

In Griffin, the Supreme Court upheld the warrantless non-consensual search of a probationer's home based upon a tip from a police officer that there were or might be guns in the probationer's apartment. The probation officer proceeded with the search pursuant to a state regulation which authorized "any probation officer to search a probationer's home without a warrant

6

as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband-- including any item that the probationer cannot possess under the probation conditions." Griffin, 483 U.S. at 870-71.[1]

The Court concluded that the search did not violate the Fourth Amendment based on its finding that "a State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." Id. at 873-74. The Court found that a warrant requirement would "interfere to an appreciable degree" with the ability of the probation system to adequately supervise probationers by "mak[ing] it more difficult for probation officials to respond quickly to evidence of misconduct" and "reduc[ing] the deterrent effect that the possibility of expeditious searches would otherwise create." Id. at 876. This reality, coupled with the fact that probationers "do not enjoy the 'absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions'" led the court to the conclusion that a warrantless, non-consensual search of a probationer's home on the basis of less than probable cause was "'reasonable' within the meaning of the Fourth Amendment[.]" Id. at 874, 880 (citations omitted).

The Supreme Court broadened this holding in Knights. Knights

---

[1] Wisc. Admin. Code H.S.S. §§ 328.21(4), 328.16(1) (1981). See Griffin, 483 U.S. at 871.

also involved the warrantless non-consensual search of a probationer's home based on reasonable suspicion that criminal conduct was occurring or about to occur. In Knights, the Court of Appeals held that a warrant was necessary for the search of the probationer's home because it was not conducted for the purpose of monitoring whether the probationer was complying with probation restrictions but rather for investigation of suspected unrelated criminal conduct. Because the search was for "investigatory" rather than "probationary" purposes the Court of Appeals suppressed the evidence recovered in the search. The Supreme Court reversed. The Court pointed out that the probation order which Knights signed provided that Knights would "submit his person, property, place of residence, vehicle, and personal effects to search at any time with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." Knights, 517 U.S. at 114. The Court rejected appellant's view and that of the Court of Appeals that "a warrantless search of a probationer satisfies the Fourth Amendment only if it is just like the search at issue in Griffin -- i.e., a 'special needs' search conducted by a probation officer monitoring whether the probationer is complying with probation restrictions. This dubious logic--that an opinion upholding the constitutionality of a particular search implicitly holds unconstitutional any search that is not like it--runs contrary to Griffin's express statement that its 'special needs' holding made it 'unnecessary to consider whether' warrantless

8

searches of probationers were otherwise reasonable within the meaning of the Fourth Amendment." Knights, 534 U.S. at 117. The Court reasoned that the state not only has a reasonable interest in ensuring that a probationer keeps the terms of his probation, but also in ensuring that he does not commit any further criminal acts. Id. at 117, 120-121. The Court concluded that "the warrantless search of Knights, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." Id. at 122.

Keith argues that the search of his home is distinguishable from both Knights and Griffin. He points out that in Knights there was a written condition in the probation order--signed by Knights-- authorizing the warrantless search. He also finds it significant that a state regulation authorized the warrantless search in Griffin. Because the government points to no such written condition or explicit state regulation in this case, he contends that neither Griffin or Knights is helpful to the government. We are unpersuaded by this argument.

It is true that Keith signed no written order of probation giving permission to search his home on reasonable suspicion of wrong doing; nor is there an explicit Louisiana state regulation permitting such a search. Searches of probationer's homes on reasonable suspicion of probation violation, however, have been sustained by Louisiana courts on numerous occasions. See State v. Malone, 403 So. 2d 1234 (La. 1981); State v. Drane, 828 So. 2d 107

9

(La. Ct. App. 2002), State v. Vailes, 564 So. 2d 778 (La. Ct. App. 1990). Thus, a probationer in Louisiana--where the courts have consistently approved the practice of searching probationers' homes based on reasonable suspicion--is just as aware of the decreased expectation of privacy that follows from probation as a probationer in a state with a Griffin-like regulation in place.

Also, we cannot read Knights or Griffin as requiring either a written condition of probation or an explicit regulation permitting the search of a probationer's home on reasonable suspicion. Indeed as the Court noted in Knights, the Wisconsin regulation that authorized the search in Griffin was not even promulgated until after Griffin had been sentenced. 534 U.S. at 117. The core reasoning of the Court in both cases is directed at explaining why the needs of the probation system outweigh the privacy rights of the probationers generally, who inherently "do not enjoy the absolute liberty to which every citizen is entitled." Id. at 119 (internal quotations marks omitted). For these reasons we are unpersuaded that Griffin and Knights can be distinguished on this basis and conclude that the district court correctly concluded that the "reasonable suspicion" standard adopted by the Court in those cases applies to the search of Keith's home.

C.

We also reject Keith's argument that the facts available to Agent Myers at the time of the search were not adequate to support a reasonable suspicion that Keith was engaging in criminal activity

10

that violated his probation.  Agent Myers was acting on information received by the police from a person engaged in the retail business in the same rural community where the defendant lived, who knew the defendant and knew of the defendant's prior involvement in building and detonating bombs.  As the district court noted, this tip was "right on the money:  A person known in the community to handle pipe bombs has got himself some more pipe."  Supp. Rec. at 33.  The purchase of such legitimate materials as pipe nipples and end caps when viewed in isolation and without regard to his known criminal history probably would not create reasonable suspicion.  When these otherwise innocent purchases are considered in light of Keith's history of constructing pipe bombs, however, Agent Myers's suspicion that Keith might be again constructing bombs was a reasonable inference.  We therefore conclude that the record fully supports the district court's conclusion that Agent Myers had reasonable suspicion that Keith was engaged in constructing pipe bombs.  The district court correctly denied the motion to suppress.

AFFIRMED.