## S07A0573. JONES v. THE STATE.
(653 SE2d 456)

SEARS, Chief Justice.

Jerry William Jones has pleaded guilty to four counts of murder and eighteen related crimes, and the State has given notice of its intent to seek the death penalty in a sentencing trial. This Court granted Jones's application for interim review and directed the parties to address whether the trial court erred in denying Jones's motion to suppress evidence found at his residence, his motion to bar imposition of the death penalty or a life sentence without parole because the indictment does not allege the statutory aggravating circumstances, and his motions concerning the amended discovery statute. For the reasons set forth below, we reverse and remand regarding the trial court's order denying Jones's motion to suppress evidence found at his residence and affirm as to the remaining two issues.

1. Armed with an arrest warrant but without a search warrant, a probation officer, accompanied by several law enforcement officers, searched Jones's apartment for approximately 46 minutes. We hold that the search was unlawful insofar as it exceeded a plain view search incident to an attempted arrest of Jones in his apartment.

(a) As this Court and the Supreme Court of the United States have both noted, "the Fourth Amendment applies to probationers as

well as other citizens."[1] The Fourth Amendment rights of probationers certainly may be lawfully restricted. However, the Supreme Court of the United States has stressed the role of valid laws, legally authorized regulations, and sentencing orders in the process of lawfully limiting the right not to have one's home searched without a warrant.

In *Griffin v. Wisconsin*, the Supreme Court considered whether a probationer's apartment could be subjected to a warrantless search based on " 'reasonable grounds' (not probable cause) to believe that contraband [wa]s present."[2] The Court concluded that the search in question was constitutional under a "special needs" exception to the warrant requirement.[3] However, the Court emphasized that the limitation of Wisconsin probationers' Fourth Amendment rights arose out of state law, sentencing orders, and legally authorized regulations, not out of the ungoverned preferences of searching officers.[4] The Court held as follows:

> The search of Griffin's residence was "reasonable" within the meaning of the Fourth Amendment *because it was conducted pursuant to a valid regulation governing probationers.*[5]

The Court left open the question of whether "*any* search of a probationer's home by a probation officer is lawful when there are 'reasonable grounds' to believe contraband is present."[6] In *Fox v. State*, we noted the openness of the question of whether *any* search of a probationer based on "reasonable grounds" was constitutionally permissible; however, we ultimately did not have to answer that question, because we found that the State had not shown "reasonable grounds" for the search at issue.[7]

---

[1] *Allen v. State*, 258 Ga. 424, 425 (2) (369 SE2d 909) (1988). See also *Griffin v. Wisconsin*, 483 U. S. 868, 873 (II) (A) (107 SC 3164, 97 LE2d 709) (1987) ("A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' "); *Fox v. State*, 272 Ga. 163, 165 (2) (527 SE2d 847) (2000) ("To begin with, we note that the Fourth Amendment applies to probationers.").

[2] *Griffin*, 483 U. S. at 872 (I).

[3] See id. at 873-877 (II).

[4] See id. at 870 (noting that the Wisconsin probationers' rights against warrantless searches had been limited by "Wisconsin law" and " 'conditions set by the court and rules and regulations established by the [health and social services] department' ").

[5] Id. at 880 (II) (B) (Emphasis supplied.).

[6] Id. (Emphasis in original.)

[7] *Fox*, 272 Ga. at 165 (2) ("[W]e conclude . . . that, *at a minimum*, when a probationer has not consented to a search, a warrantless search of a probationer's home must be based upon reasonable grounds to believe that the probationer has contraband in the home or is engaged in some criminal activity there." (Emphasis supplied.)).

In *United States v. Knights*, the Supreme Court considered whether a warrantless search of a probationer's apartment for investigatory purposes violated the Fourth Amendment.[8] The Court concluded that the warrantless search in question was lawful, but, in doing so, the Court emphasized the fact that the probationer's Fourth Amendment rights had been limited explicitly by a search condition in the trial court's sentencing order. The Court stated that the explicit search condition contained in Knights's sentencing order was a "salient circumstance" in its consideration of whether the search was reasonable under the Fourth Amendment. The Court continued as follows:

> The judge who sentenced Knights to probation determined that it was necessary to condition the probation on Knights's acceptance of the search provision. . . . The probation order clearly expressed the search condition and Knights was unambiguously informed of it. *The probation condition thus significantly diminished Knights's reasonable expectation of privacy.*[9]

Thus, although the Court acknowledged that probationers generally do not enjoy absolute liberty, it also implicitly noted that probationers' liberties are properly limited only insofar as valid laws, legally authorized regulations, and sentencing orders[10] impose such limitations, and the Court explicitly held that *notice* of such valid limitations of probationers' liberties serves an important role in making those limitations constitutionally permissible.

In Jones's case, the State, which bears the burden of proving the legality of the search of Jones's apartment,[11] failed to show the existence of any law, legally authorized regulation, or sentencing order imposing any limitation on Jones's Fourth Amendment right against warrantless searches of his residence at the time of the search. The State introduced a sentencing form by which Jones was sentenced in Gordon County on August 15, 2001, for possession of a

---

[8] 534 U. S. 112, 116 (122 SC 587, 151 LE2d 497) (2001) ("The question then is whether the Fourth Amendment limits searches pursuant to this probation condition to those with a 'probationary' purpose.").

[9] Id. at 119-120 (Emphasis supplied.).

[10] As was the case in *Knights*, sentencing orders often impose limitations on Fourth Amendment rights where the defendant has agreed to such limitations in plea bargaining. See *Allen*, 258 Ga. at 425 (4). See also *Samson v. California*, 547 U. S. 843 (126 SC 2193, 165 LE2d 250) (2006) (addressing a waiver of Fourth Amendment rights by prisoners as a condition for release on parole). In such cases, there is a waiver of rights in addition to notice of a diminution of rights.

[11] See OCGA § 17-5-30 (b); *Watts v. State*, 274 Ga. 373, 375-376 (2) (552 SE2d 823) (2001).

firearm by a convicted felon. Although the pre-printed sentencing form provided a list of general and special conditions of probation that included a requirement that the probationer submit to warrantless searches upon the request of a probation officer, the box next to the warrantless search condition was not checked. The State introduced another form on which Jones's attorney acknowledged the conditions of probation imposed by the August 15, 2001, sentencing order, but, as we have noted, those conditions did not include a warrantless search condition. The State also introduced an order placing Jones in "Intensive Probation Supervision" for "4 - 6 months." This order did include a condition requiring Jones to agree to warrantless searches upon the request of a probation officer; however, the search in question here occurred after the intensive probation supervision period had ended. Thus, the Gordon County court orders contained in the record not only failed to place Jones on notice that he had a diminished expectation of Fourth Amendment privacy at the time of the search in question, those orders affirmatively suggested precisely the *opposite*. Finally, the State introduced an arrest warrant for an alleged curfew violation. The style of the arrest warrant suggests that Jones had been sentenced to a term of probation in Floyd County for obstruction of an officer and violation of a motor vehicle law. However, the arrest warrant itself contains no indication that a warrantless search condition had been imposed in the Floyd County case, and the State produced no other evidence to that effect. Under Georgia law, a trial court has discretion in deciding whether or not to impose general and special conditions of probation.[12] However, in Jones's case, the State failed to introduce any evidence showing that Jones's Fourth Amendment right against warrantless searches of his residence was limited by court order or anything else in Georgia law at the time his apartment was searched.

As discussed above, the Supreme Court of the United States has strongly suggested that the Fourth Amendment right not to have one's home searched without a warrant may only be denied to probationers through a valid law, legally authorized regulation, or sentencing order giving notice of that deprivation of rights. We find such reasoning persuasive because notice is a critical consideration in determining the limits of any reasonable expectation of privacy. The State has pointed out no such law, legally authorized regulation, or sentencing order stripping Jones of his Fourth Amendment right not to have his home searched without a warrant. Accordingly, we hold

---

[12] See OCGA §§ 17-10-1 (a), 42-8-35; *Priest v. State*, 261 Ga. 651, 652 (2) (409 SE2d 657) (1991) ("[A] trial judge has considerable discretion in fashioning appropriate conditions of probation.").

that Jones's status as a probationer, standing alone, cannot serve as a substitute for a search warrant.[13]

(b) The State, in its closing remarks in the hearing on Jones's motion to suppress, briefly mentioned exigent circumstances. However, the State failed at the hearing to show any reason for the searching officers to believe that any exigent circumstances existed.[14] The State presented testimony from a law enforcement officer indicating that the officer had received a briefing from his superior, became involved in an attempt to locate Jones, contacted Jones's probation officer by telephone seeking information about Jones's whereabouts and his address, met with Jones's probation officer in person and received "a front sheet of paperwork," gave the "front sheet" to his superior officer, had several other conversations with Jones's probation officer, and then waited with the probation officers and several law enforcement officers until the search began. Critically missing from all of this testimony is any information specifically connecting Jones to any crimes and any information indicating

---

[13] Compare *United States v. Godsey*, 2007 U. S. App. LEXIS 6442, *4-*8 (IV) (11th Cir. 2007) (unpublished opinion finding a warrantless search lawful based on the existence of an Alabama probation regulation authorizing warrantless searches of probationers); *United States v. Freeman*, 479 F3d 743, 748 (II) (10th Cir. 2007) ("We interpret the *Knights-Samson* line of cases as resting on the parolee's diminished expectation of privacy stemming from his own parole agreement and the state's regulations applicable to his case."); *United States v. Midgette*, 478 F3d 616 (III) (4th Cir. 2007) (finding a North Carolina probation search constitutional where the "sentencing judge must specially impose the warrantless search condition" and the sentencing judge had done so); *United States v. Giannetta*, 909 F2d 571, 575-576 (III) (A) (1st Cir. 1990) (holding a search lawful because a sentencing order imposed a warrantless search condition similar to the search regulation in *Griffin*); *United States v. Schoenrock*, 868 F2d 289, 291-293 (8th Cir. 1989) (same); *Commonwealth v. Pickron*, 634 A2d 1093, 1097-1098 (Penn. 1993) (holding that, in the absence of consent by the probationer, a "statutory or regulatory framework" is necessary to render a warrantless search of a probationer constitutional); *People v. Flagg*, 577 NE2d 815, 816-818 (Ill. App. Ct. 1991) (holding a warrantless search of a parolee's residence unconstitutional where there was no state law or regulation authorizing it); *United States v. Grimes*, 225 F3d 254, 258-259 (2d Cir. 2000) (discussing the role of New York's state regulations as interpreted by state officials and by the state courts in making the search of a parolee's residence lawful); *People v. Hale*, 714 NE2d 861, 863-864 (N.Y. 1999) (holding a warrantless probation search constitutional based on the fact that a negotiated sentence that included a search provision carried "as much if not more constitutional weight" than a state regulation authorizing such searches); *State v. Lockwood*, 632 A2d 655, 661 (Vt. 1993) (holding that "narrowly tailored probation conditions provide guidance to probation officers similar to that provided by the regulatory scheme in *Griffin*"). But see *United States v. Yuknavich*, 419 F3d 1302, 1308-1311 (III) (11th Cir. 2005) (finding a warrantless search of a probationer's residence constitutional despite the absence of any law, regulation, or probation condition); *United States v. Hill*, 967 F2d 902, 907-911 (II) (B) (3d Cir. 1992) (approving the warrantless search of a parolee's residence where no statute or regulation authorized the search); *United States v. Keith*, 375 F3d 346, 348-351 (II) (B) (5th Cir. 2004) (finding a warrantless probation search lawful because of a "decreased expectation of privacy" arising out of a consistent line of state case law).

[14] See *Raheem v. State*, 275 Ga. 87, 92-93 (8) (560 SE2d 680) (2002) ("A warrant is required for an arrest made inside the arrested person's residence, absent consent or exigent circumstances.").

exigent circumstances to enter Jones's apartment without a warrant. Likewise, records from a probation office computer admitted by the trial court under the business records exception fail to show how any officers came to believe Jones had committed the crimes or that exigent circumstances existed. We might infer or guess at these omitted details; however, doing so obviously would be improper, particularly because the State bears the burden to prove the legality of the search.

(c) Although not raised by the parties or the trial court, we must address the following statute, because it is relevant to whether the trial court's order was right for any reason:

Whenever, within the period of probation, a probation supervisor believes that a probationer under his supervision has violated his probation in a material respect, he may arrest the probationer without warrant, wherever found, and return him to the court granting the probation or . . . to a court of equivalent original jurisdiction within the county wherein the probationer resides for purposes of supervision.[15]

Although, as was noted above, there is nothing in Georgia law that creates a blanket authorization for warrantless *searches* of probationers' homes based on less than probable cause, this statute clearly attempts to severely limit probationers' rights against *arrest*, even at home without a warrant, based on less than probable cause. The statutory limitation of rights is subject only to constitutional limitations, and, as the discussion above emphasizes, the constitutional limitations themselves are affected by the statute's existence. The statute places probationers on notice that their rights have been limited and, in turn, diminishes their expectation of privacy. With such notice in place, a warrantless arrest is permissible at least[16] where the arresting officer has "reasonable cause" to believe the arrest is necessary to serve the legitimate "special needs" of probation revocation, including the prompt protection of the public.[17] In determining if the probation supervisor had "reasonable cause" for the arrest, it is permissible to consider "the unauthenticated tip of a police officer" regardless of whether there is any evidence in the

---

[15] OCGA § 42-8-38 (a).

[16] We need not address whether a warrantless entry into a probationer's home for the purpose of his or her arrest based on a lesser degree of cause would be constitutionally permissible or whether there is any difference between "reasonable cause" and the meaning of "believes" in OCGA § 42-8-38 (a).

[17] See generally *Griffin*, 483 U. S. 868 (authorizing the warrantless search of a probationer's home based upon "reasonable cause" where prior notice of the possibility of such searches had been given).

record showing "whether its basis was firsthand knowledge or, if not, whether the firsthand source was reliable."[18] Although, inexplicably, the State presented no evidence in the hearing on the motion to suppress regarding the *basis* for the law enforcement officers' believing Jones had committed the crimes in this case, the record is clear that their belief that Jones had committed the crimes was communicated to the probation supervisor. Accordingly, we conclude that the entry into Jones's apartment for the purpose of arresting him was permissible, because the probation supervisor had, to *his* knowledge, reasonable cause for the arrest.[19]

Nevertheless, even though the entry for the purpose of effecting an *arrest* was permissible, most of the evidence seized without a *search* warrant after Jones was found not to be in the apartment must be excluded under the Fourth Amendment. The search conducted was only permissible insofar as it involved the observation of items of obvious evidentiary value in plain view during the time and activities required to attempt Jones's arrest.[20] From our review of the record and the trial court's order, it appears that only one item likely would be admissible as an item actually seen in plain view during the three- to four-minute search for Jones. However, in view of the findings of fact that could potentially affect the proper resolution of this motion to suppress, we remand the issue to the trial court for a new ruling consistent with this opinion.

2. The United States Supreme Court has held that a statutory aggravating circumstance in a death penalty case is " 'the functional equivalent of an element of a greater offense' " and, as such, must be proven to a jury beyond a reasonable doubt.[21] However, this Court has held that the Constitution of the United States does *not* require that statutory aggravating circumstances be included in Georgia indictments, because the indictment requirement of the Fifth Amendment has not been incorporated into the Fourteenth Amendment and, therefore, is not applicable to the states.[22] All that is necessary under the Fourteenth Amendment is notice sufficient to satisfy due process.[23]

---

[18] Id. at 878 (II) (B).

[19] We need not address whether the issuance of the arrest warrant in this case was proper, because we hold that the entry for the purpose of effecting an arrest would have been permissible even without a warrant.

[20] See *Chimel v. California*, 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969).

[21] *Ring v. Arizona*, 536 U. S. 584, 609 (II) (122 SC 2428, 153 LE2d 556) (2002) (quoting *Apprendi v. New Jersey*, 530 U. S. 466, 494, n. 19 (120 SC 2348, 147 LE2d 435) (2000)).

[22] See *Hurtado v. California*, 110 U. S. 516 (4 SC 111, 28 LE 232) (1884).

[23] See *Walker v. State*, 281 Ga. 157, 160-161 (2) (635 SE2d 740) (2006); *Terrell v. State*, 276 Ga. 34, 40-42 (5) (572 SE2d 595) (2002).

However, Jones raises a related issue not yet addressed explicitly by this Court. He argues that this Court should find that Georgia's statutory aggravating circumstances are "elements" of death eligible murder as a matter of *Georgia* law. He argues that *Ring*, although binding only on the question of whether statutory aggravating circumstances are "elements" with regard to federal constitutional law, should be considered as persuasive authority by this Court in deciding if statutory aggravating circumstances are also "elements" under Georgia law and, as such, must be included in indictments.

Jones correctly notes that an indictment is required in all capital felony cases in Georgia.[24] He also argues that indictments were required under the common law and are among the "inherent rights" recognized by the Georgia Constitution.[25] However, the pivotal question here is whether statutory aggravating circumstances are "elements" of death eligible murder[26] under Georgia law. This Court's precedents suggest otherwise. This Court has stated: "Under Georgia law, the State is not required to allege the statutory aggravating circumstances in the indictment."[27] This Court has also rejected a claim "that [a] trial court lacked subject matter jurisdiction because the indictment[ ] failed to specify any statutory aggravating circumstances."[28] In light of these precedents and our reading of the relevant statutes, we hold that under *Georgia* law statutory aggravating circumstances are sentencing factors rather than "elements" of death eligible murder. Accordingly, we reaffirm that statutory aggravating circumstances need not be included in indictments.

3. Jones argues that the amended criminal discovery procedure is unconstitutional. See OCGA § 17-16-1 et seq. Pretermitting whether Jones has standing to complain regarding the amended discovery statute in light of his decision not to opt into the discovery procedure, we affirm the trial court's decision upholding the constitutionality of the statute in light of our previous rejection of each of Jones's arguments.[29]

---

[24] See OCGA § 17-7-70 (a).

[25] Ga. Const., Art. I, Sec. I, Par. XXVIII.

[26] OCGA § 16-5-1 sets out the elements of murder and sets the punishment for murder at imprisonment for life or death. A murder conviction can result in a death sentence only if a jury finds beyond a reasonable doubt the existence of at least one statutory aggravating circumstance. OCGA §§ 17-10-31, 17-10-31.1. The statutory aggravating circumstances are defined in OCGA § 17-10-30.

[27] *Terrell*, 276 Ga. at 41 (5). Accord *Thomason v. State*, 281 Ga. 429, 431 (7) (637 SE2d 639) (2006).

[28] *Dungee v. Hopper*, 241 Ga. 236, 236 (2) (244 SE2d 849) (1978); *Weatherbed v. State*, 271 Ga. 736 (524 SE2d 452) (1999).

[29] See *Muhammad v. State*, 282 Ga. 247 (647 SE2d 560) (2007); *Stinski v. State*, 281 Ga. 783, 786-788 (4) (642 SE2d 1) (2007).

*Judgment affirmed in part and reversed in part and case remanded with direction. Hunstein, P. J., Benham, Carley, Thompson and Hines, JJ., and Chief Judge Brenda S. Weaver, concur. Melton, J., disqualified.*

DECIDED OCTOBER 29, 2007 —
RECONSIDERATION DENIED DECEMBER 14, 2007.

*John R. Martin, Joseph A. Romond, Nichols, Kaster & Anderson, Garland, Samuel & Loeb, Edward T. M. Garland,* for appellant.
*T. Joseph Campbell, District Attorney, Laura J. Murphree, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General,* for appellee.