**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**November 20, 2012**

# In the Court of Appeals of Georgia

A12A1305. EVANS v. THE STATE.                                    DO-050 C

DOYLE, Presiding Judge.

Following a jury trial, Dewayne Lamar Evans was convicted of possession of marijuana with the intent to distribute,[1] possession of more than one ounce of marijuana,[2] possession of marijuana with the intent to distribute within 1,000 feet of public housing,[3] possession of marijuana with the intent to distribute within 1,000 feet of a state park,[4] and possession of marijuana with the intent to distribute within

---

[1] OCGA § 16-13-30 (j) (1).

[2] OCGA § 16-13-30 (a).

[3] OCGA § 16-13-32.5 (b).

[4] OCGA § 16-13-32.5 (a).

1,000 feet of a school.[5] Evans appeals the denial of his motion for new trial, arguing that the trial court erred by denying his motion to suppress evidence following an unreasonable search and seizure. He also challenges the sufficiency of the evidence. We affirm, for the following reasons.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[6]

Viewed in this light, the evidence shows that in the early evening on December 2, 2010, an individual called the police and advised that Evans was leaving his girlfriend's house and was walking down Kentucky Avenue carrying a large, gallon-sized bag of marijuana.[7] Sergeant Gene Mathews, who was familiar with Evans and knew that he was on probation, contacted Chris Smith of the

---

[5] OCGA § 16-13-32.4 (a).

[6] (Punctuation omitted.) *Stepho v. State*, 312 Ga. App. 495, 496 (718 SE2d 852) (2011), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[7] The State's witnesses refer to the caller as a confidential informant, but there was no testimony regarding the identity of the informant or any other facts to support a determination regarding his reliability.

probation department and advised that Evans "was known to have a large amount of marijuana in his possession" ; Smith, who was also familiar with Evans, confirmed that Evans was on "active probation."[8] While four officers and Smith were en route to Kentucky Avenue, the confidential informant called again[9] and advised that Evans was "getting ready to get into the passenger side of a maroon-in-color Chevrolet Caprice with no hubcaps heading to his mom's house."[10] Smith directed the officers to Evans's mother's house – which was also Evans's address of record on file at the probation office – on Haskell Ward Road, where they observed a maroon Chevrolet with no hubcaps in the driveway.

Mathews, who was wearing his police uniform, and Smith, who was wearing his uniform and a vest marked, "probation," approached Evans's mother's house in Smith's marked probation vehicle. As the two officers exited the vehicle, Evans

---

[8] There was no evidence introduced regarding the prior conviction(s) for which Evans was on probation. Smith did testify that "I've had contact with [Evans] tons of times in the field. We have caught him with drugs before[,] and he has . . . found a way to beat the charges."

[9] The probation officer was in the car with Lieutenant Keys when he received the second phone call from the informant.

[10] The record does not indicate how much time had elapsed between the two phone calls from the anonymous informant.

3

exited the house and walked toward the street. Smith asked Evans if they could speak with him, and Evans turned around and ran back towards the house. Smith and Mathews gave chase, and both men instructed Evans to stop, with Smith identifying himself as a probation officer; Evans failed to comply, however, and ran into the house and locked the door.

Smith banged on the door, but no one answered, so he went around to the side of the residence in an attempt to gain entry and was unsuccessful.[11] Mathews then removed a window air conditioning unit, and Lieutenant Keys crawled in through the window, unlocked the door, and allowed Smith and the police officers to enter.[12] Once inside, one of the officers went into one of the home's two bedrooms "to clear that bedroom for officer safety issues," and police found Evans, two men, and two small children in one of bedrooms. Mathews entered the adjoining bathroom, and a young girl in the shower noticed him and started screaming. Officer Kaylen Krueger,

---

[11] Lieutenant Curtis Keys testified that the police did not attempt to secure a search warrant because they believed that "[b]y the time the search warrant was signed and all of that, all the drugs would have been gone."

[12] Lieutenant Keys testified, "I know DeWayne Evans'[s] past. I dealt with him and have been dealing with him now for about ten years. Every time he normally deals with the police[,] and he's holding drugs, he always runs and tries to get rid of them."

a female, went into the bathroom while the girl finished showering and dressing, and Krueger noticed a small amount of marijuana on the toilet seat. Lieutenant Keys then glanced into the bathroom and saw marijuana residue on the toilet and floor.

Police detained the individuals in the house, and shortly thereafter, Evans's sister attempted to enter the residence and explained that she lived there with her mother. The sister then instructed her aunt, who lived nearby, to call her mother; the mother arrived at the house approximately 15 minutes later and signed a written consent to search the house after the police told her they saw marijuana residue in the bathroom. Mathews then went into the bathroom to collect the marijuana from the floor and noticed some floating in the toilet. Mathews attempted to collect the marijuana from the toilet, but then flushed it, at which point he saw a large chunk of marijuana come up the toilet, and the toilet began to back up. Mathews then turned off the water supply, drained the water, removed the toilet, and, using a clothes hanger, retrieved a plastic bag containing marijuana from the toilet.

Kenneth Osborne, who was one of the men present in the house when the police entered, testified that he was at the house when the police began banging on the door. According to Osborne's written statement, Evans "was in the restroom" at

the time and went to the door and locked it.[13] At trial, Osborne clarified that he did not actually see Evans in the bathroom, but instead heard him banging on the bathroom door.

The State crime lab tested the material seized by the police in the bathroom and determined that it was marijuana.[14]

Prior to trial, Evans filed a motion to suppress on the basis that the police did not have probable cause to enter the residence. Following a hearing, the trial court verbally denied the motion, stating that notwithstanding the court's inability to judge the reliability of the confidential informant, Evans was nevertheless subject to arrest because he refused the probation officer's direct order, and the officers were justified in entering the house based on the exigent circumstances of Evans's flight. Evans was thereafter convicted on all counts, and this appeal followed.

1. Evans argues that the trial court erred by denying his motion to suppress. We disagree.

---

[13] Osborne testified that Evans did not leave the house and re-enter before the police began banging on the door, and the police did not kick in the air conditioning unit until after they spent 15 to 20 minutes trying to kick in the door.

[14] According to the crime lab witness, the total net weight of the marijuana was 60.65 grams.

On review of the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial. Where the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to these undisputed facts de novo. As to questions of fact and credibility, however, we construe the evidence in favor of the trial court's findings and judgment, which must be accepted unless clearly erroneous.[15]

"[E]ven if the trial court's asserted ground for denying a motion to suppress is erroneous, we will affirm the ruling if it is 'right for any reason.'"[16]

"It is axiomatic that, under the Fourth Amendment, police officers are prohibited from entering a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances."[17] Although "the Fourth Amendment

---

[15] (Citations omitted.) *Wilson v. State*, 308 Ga. App. 383 (708 SE2d 14) (2011).

[16] (Punctuation omitted.) *Lewis v. State*, ___ Ga. App. ___, ___ (730 SE2d 757) (2012).

[17] *State v. Pando*, 284 Ga. App. 70, 72 (1) (a) (643 SE2d 342) (2007).

7

applies to probationers as well as other citizens,"[18] probationers may waive such rights.[19] Here,

> the State, which bears the burden of proving the legality of the search of [Evans's residence], failed to show the existence of any law, legally authorized regulation, or sentencing order imposing any limitation on [Evans's] Fourth Amendment right against warrantless *searches* of his residence at the time of the search.[20]

Thus, given the absence of any order imposing a limitation on Evans's Fourth Amendment rights, his status as a probationer cannot serve as the sole substitute for a *search* warrant, and therefore, the salient issue is whether the entry into his residence was otherwise reasonable under the Fourth Amendment.[21]

OCGA § 42-8-38 (a) provides in relevant part:

Whenever, within the period of probation, a probation supervisor believes that a probationer under his or her supervision has violated his

---

[18] (Punctuation omitted.) *Jones v. State*, 282 Ga. 784, 784-785 (1) (a) (653 SE2d 456) (2007), quoting *Allen v. State*, 258 Ga. 424, 425 (2) (369 SE2d 909) (1988) and citing *Griffin v. Wisconsin*, 483 U. S. 868, 873 (II) (A) (107 SC 3164, 97 LE2d 709) (1987) and *Fox v. State*, 272 Ga. 163, 165 (2) (527 SE2d 847) (2000).

[19] See *Fox*, 272 Ga. at 164 (1).

[20] (Footnote omitted; emphasis supplied.) *Jones*, 282 Ga. at 786 (1) (a).

[21] See *Fox*, 272 Ga. at 165 (2).

8

or her probation in a material respect . . . if the circumstances warrant, may arrest the probationer without warrant, wherever found, and return the probationer to the court granting the probation or, if under supervision in a county or judicial circuit other than that of conviction, to a court of equivalent original criminal jurisdiction within the county wherein the probationer resides for purposes of supervision.

Thus, although

there is nothing in Georgia law that creates a blanket authorization for warrantless *searches* of probationers' homes based on less than probable cause, this statute clearly attempts to severely limit probationers' rights against *arrest,* even at home without a warrant, based on less than probable cause. The statutory limitation of rights is subject only to constitutional limitations, and . . . the constitutional limitations themselves are affected by the statute's existence. The statute places probationers on notice that their rights have been limited and, in turn, diminishes their expectation of privacy.[22]

The Supreme Court of Georgia has held that "[w]ith such notice in place, a warrantless arrest is permissible at least where the arresting officer has 'reasonable cause' to believe the arrest is necessary to serve the legitimate 'special needs' of probation revocation, including the prompt protection of the public."[23] And when

---

[22] (Emphasis in original.) *Jones*, 282 Ga. at 789 (1) (c).

[23] (Footnote omitted.) Id.

"determining if the probation supervisor had 'reasonable cause' for the arrest, it is permissible to consider 'the unauthenticated tip of a police officer' regardless of whether there is any evidence in the record showing whether its basis was firsthand knowledge or, if not, whether the firsthand source was reliable."[24]

In this case, pretermitting whether the anonymous caller exhibited sufficient indicia of reliability, it is permissible to consider the unauthenticated tip of the police to the probation officer. Considering that the police had advised the probation officer that Evans had been seen carrying drugs, combined with Evans's refusal to stop and subsequent flight when approached by the police and probation officers and the probation officer's familiarity with Evans's history of drug possession and flight from police and probation officers, we conclude that the probation officer had reasonable cause for Evans's arrest.[25] Therefore, the entry into Evans's residence for the purpose of arresting him was permissible.[26]

Once the officers entered the residence to arrest Evans, they were authorized "to ensure their own safety and prevent the destruction of evidence by conducting a

---

[24] Id. at 789-790 (1) (c).

[25] See id.

[26] See id.

10

limited search of the entire house for other occupants; they were also authorized to seize any items of contraband or evidence of a crime they found in plain view during this securing of the house."[27] Here, the probation and police officers observed the marijuana in the bathroom on the floor and toilet while they were securing the house and effectuating Evans's arrest. Thus, the trial court did not err by denying Evans's motion to suppress.

2. Evans also contends that the evidence was insufficient to support his conviction because the other individuals in the residence also had equal access to the marijuana. This enumeration does not warrant reversal.

> Possession may be either actual or constructive. Constructive possession exists where a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing. As long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact.[28]

---

[27] (Punctuation omitted.) *Fair v. State*, 284 Ga. 165, 175 (3) (d) (664 SE2d 227) (2008).

[28] (Citations and punctuation omitted.) *Bailey v. State*, 294 Ga. App. 437, 439-440 (1) (669 SE2d 453) (2008).

Here, the State introduced evidence that Evans lived at the residence, thereby "giv[ing] rise to a rebuttable presumption that the defendant possessed the contraband. This presumption of constructive possession arising from ownership or control of the premises can be overcome by evidence that other persons had equal access to the contraband found there."[29]

> Generally, where such a presumption is the sole circumstantial evidence inculpating the defendant, if the proof also shows that others than the accused have equal right of access and occupancy it is usually insufficient. That being said, whether the evidence of equal access is sufficient to rebut any inference of possession arising from discovery of drugs is a question properly left to the [jury].[30]

Here, Osborne, one of the other men present in the house before the police entered, initially told police that Evans was in the bathroom while the police attempted to gain entry into the residence; at trial, Osborne testified that he never saw Evans in the bathroom but that Evans was banging on the bathroom door where the marijuana was ultimately found. Given this evidence, coupled with Evans's flight

---

[29] (Citation and punctuation omitted.) *Dickerson v. State*, 312 Ga. App. 320, 321 (1) (718 SE2d 564) (2011).

[30] (Citation and punctuation omitted.) *Martin v. State*, 305 Ga. App. 764, 766 (1) (700 SE2d 871) (2010).

from the police and refusal to admit them into the house, we find the evidence supporting Evans's possession conviction sufficient.

3. Next, Evans argues that the evidence was insufficient to support his conviction for possession of marijuana with the intent to distribute because the State failed to establish Evans's intent to distribute.

Evans relies on *Vines v. State*,[31] which states that "[w]here no additional evidence of intent to distribute is offered, such as scales, drug paraphernalia, large amounts of cash, division of drugs into individual packages, or a prior conviction of possession with intent to distribute, the expert testimony is critical, and the conviction cannot be sustained without it."[32]

Here, however, the State introduced into evidence the 60.65 grams of marijuana, as well as multiple small individual baggies found in the packaging recovered at the scene. And there was no evidence that Evans was under the influence of marijuana at the time or that it was for his personal use.[33] Under these

---

[31] 296 Ga. App. 543 (675 SE2d 260) (2009).

[32] (Punctuation omitted.) Id. at 547 (1).

[33] Compare id. at 543 (officer smelled the overwhelming odor of marijuana emanating from the defendant's vehicle).

circumstances, "the jury was authorized to reject a hypothesis that the marijuana was for personal use, as opposed to distribution."[34]

4. Evans argues that the State failed to prove that he possessed marijuana with the intent to distribute within 1,000 feet of public housing, a public park, and an elementary school. We disagree.

Officer Mathews testified that he personally used a handheld global positioning system ("GPS") unit to measure the distance between the location of the confiscated marijuana and the adjacent public housing, public park, and elementary school, and found the distances to be 115.95 feet, 248.15 feet, and 947.97 feet, respectively. This evidence was sufficient.

5. Evans further argues that the evidence was insufficient to support his conviction for possessing marijuana with the intent to distribute within 1,000 feet of a public park because there was no evidence that the park was "dedicated and set apart by the governing authority of any municipality, county, state authority[,] or the state for use as a park."

OCGA § 16-13-32.5 (a) provides:

---

[34] *Jackson v. State*, 314 Ga. App. 272, 275-276 (1) (c) (724 SE2d 9) (2012). See also *Cooper v. State*, 315 Ga. App. 773, 775-776 (2) (728 SE2d 289) (2012).

It shall be unlawful for any person to manufacture, distribute, dispense, or possess with intent to distribute a controlled substance or marijuana or a counterfeit substance in, on, or within 1,000 feet of any real property which has been dedicated and set apart by the governing authority of any municipality, county, state authority, or the state for use as a park, playground, recreation center, or for any other recreation purposes, unless the manufacture, distribution, or dispensing is otherwise allowed by law.

Here, Officer Mathews testified that the marijuana was recovered within 1,000 feet of Fairmont Park, which Lieutenant Keys characterized as "a public park." Given this testimony, we find the evidence sufficient.

6. In his final enumeration, Evans argues that the evidence was insufficient to support his conviction for possessing marijuana with the intent to distribute within 1,000 feet of an elementary school. Again, we disagree.

OCGA § 16-13-32.4 (a) provides:

It shall be unlawful for any person to manufacture, distribute, dispense, or possess with intent to distribute a controlled substance or marijuana in, on, or within 1,000 feet of any real property owned by or leased to any public or private elementary school, secondary school, or school board used for elementary or secondary education.

The accusation alleged that Evans possessed with intent to distribute marijuana "within 1[,]000 feet of A. Z. Kelsey Elementary School, a school owned by Spalding County School Board and used as an elementary school." Officer Mathews testified that the marijuana was recovered within 1,000 feet of A. Z. Kelsey Elementary. Lieutenant Keys clarified that the school was "A. Z. Kelsey Academy, which was "an elementary school for . . . autistic kids."

Evans argues that there was no evidence that the school was owned by Spalding County as alleged in the accusation, and thus, the State failed to prove the allegations of the indictment, resulting in a fatal variance between the indictment and the evidence at trial. This argument fails.

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.[35]

---

[35] (Punctuation omitted.) *Smith v. State*, ___ Ga. App. ___, ___ (1) (732 SE2d 840) (2012).

Here, the accusation sufficiently informed Evans that he was charged with possessing marijuana with the intent to distribute within 1,000 feet of A. Z. Kelsey, an elementary school. And there is no danger that Evans could be prosecuted again for the same offense.

> Thus, the language in the indictment was sufficient to put [Evans] on notice as to the essential elements of the charged offense so as not to be taken by surprise, and [Evans] could not be prosecuted again for these offenses. Therefore, we reject any fatal variance claim and hold the evidence was sufficient to satisfy the standard set forth in *Jackson v. Virginia.*[36]

> *Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[36] (Punctuation omitted.) Id. at ___ (1).