# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2843-16T3
                        A-2987-16T3

H.R.,

       Plaintiff-Appellant,

and

I.R.,

       Plaintiff,

v.

THE NEW JERSEY STATE
PAROLE BOARD,

       Defendant-Respondent.

_____

H.R.,

       Plaintiff,

and

I.R.,

       Plaintiff-Respondent,

v.

THE NEW JERSEY STATE
PAROLE BOARD,

**APPROVED FOR PUBLICATION**

**December 20, 2018**

**APPELLATE DIVISION**

Defendant-Appellant.

_____

Argued May 21, 2018 – Decided December 20, 2018

Before Judges Ostrer, Rose and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-000048-15.

Fletcher C. Duddy, Deputy Public Defender, argued the cause for appellant H.R. in A-2843-16 and respondent I.R. in A-2987-16 (Joseph E. Krakora, Public Defender, attorney; Fletcher C. Duddy, of counsel and on the briefs; Jesse M. DeBrosse, Assistant Deputy Public Defender, on the briefs).

Christopher C. Josephson, Deputy Attorney General, argued the cause for the New Jersey State Parole Board, respondent in A-2843-16 and appellant in A-2987-16 (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Christopher C. Josephson, on the briefs).

The opinion of the court was delivered by

OSTRER, J.A.D.

In these two appeals, which we consolidate for purposes of our opinion, we address whether the State Parole Board violated the rights of two sex offenders, H.R. and I.R., to be free from unreasonable searches under Article I,

Paragraph 7 of our State Constitution.[1] Plaintiffs H.R. and I.R. complain the Board did so by subjecting them to continuous satellite-based monitoring under the Sex Offender Monitoring Act (SOMA), N.J.S.A. 30:4-123.89 to -123.95. The trial court held that the monitoring was a "special needs search," relying on principles expressed in State v. O'Hagen, 189 N.J. 140 (2007). On cross-motions for summary judgment, the court held that the governmental need to monitor convicted sex offenders outweighed the privacy interests of H.R., whose expectation of privacy was already reduced because he was serving parole supervision for life (PSL) for third-degree attempted luring, N.J.S.A. 2C:13-6. But, the government's needs did not outweigh the privacy interests of I.R., who had completed his sentence for second-degree endangering the welfare of a child involving depictions of a child engaging in or simulating a prohibited sexual act, N.J.S.A. 2C:24-4(b)(5)(a).[2] I.R.'s sentence did not include PSL.

In H.R.'s appeal from judgment in the Board's favor, and in the Board's appeal from the judgment in I.R.'s favor, the parties dispute whether satellite-based monitoring is a special needs search, and whether the court properly

---

[1] Plaintiffs expressly do not seek relief under the Fourth Amendment of the United States Constitution.

[2] The Legislature has amended the Code provision three times since defendant's plea. See L. 2013, c. 51; L. 2013, c. 136; L. 2017, c. 141.

A-2843-16T3

weighed the governmental interest in monitoring and the offenders' interests in privacy. Reviewing the trial court's order de novo, see Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010), we affirm, consistent with the reasons expressed in the cogent written opinion of Judge Paul Innes.

The trial court reviewed the essentially undisputed material facts. After completing their respective terms of incarceration, both plaintiffs were designated Tier III offenders under Megan's Law, as posing a high risk of re-offending. See N.J.S.A. 2C:7-8(c). The Parole Board thereafter placed both of them on global positioning system (GPS) monitoring, as SOMA mandates. See N.J.S.A. 30:4-123.91(a)(1) (stating a "'monitored subject' [is] a person whose risk of reoffense has been determined to be high pursuant to . . . [N.J.S.A.] 2C:7-8"); Riley v. N.J. State Parole Bd., 219 N.J. 270, 283 (2014) (stating that assignment to Tier III made an offender "automatically subject to GPS monitoring under SOMA"); N.J.A.C. 10A:72-11.2(a) (same).[3]

---

[3] SOMA also authorizes the Board's Chairperson to subject to GPS monitoring "a person who the chairman deems appropriate," provided the person also satisfies one of three preconditions: the person was civilly committed as a "sexually violent predator" and has been discharged or conditionally discharged; the person has been sentenced to PSL or community supervision for life; or the person was convicted of or adjudicated delinquent for an offense enumerated in N.J.S.A. 2C:7-2 against a victim under eighteen years old, or sixty years old and over. N.J.S.A. 30:4-123.91(a)(2)(a)-(c); see also N.J.S.A. 30:4-123.91(b) (listing risk factors for the Chairperson to consider); N.J.A.C. 10A:72-11.1(b) (same). We do not address the reasonableness under

(continued)

The monitoring device is an ankle bracelet. As plaintiffs recounted in their depositions, the monitoring device affects their privacy in two ways. It enables the Board to monitor their movements and, consequently, their activities and associations, twenty-four hours a day, seven days a week. It is also visibly and audibly obtrusive, and requires daily recharging, thereby limiting plaintiffs' daily activities. Plaintiffs state that they find it humiliating and degrading. Furthermore, plaintiffs complain that the device itself is physically uncomfortable.

The trial court correctly concluded – and the State does not dispute – that attaching a device to a sex offender's body and tracking his or her movements is a search, citing Grady v. North Carolina, 135 S. Ct. 1368 (2015); see also State v. Earls, 214 N.J. 564, 586-88 (2013) (noting that Article I, Paragraph 7 protects a person's privacy interests in the locational data disclosed by cell-phone tracking technology).

The trial court also reasoned that the searches fell within the special needs exception to the warrant requirement, citing O'Hagen, 189 N.J. at 158.

(continued)
Article I, Paragraph 7 of monitoring by this alternate route. We note that GPS monitoring under that alternative shall be reviewed every 180 days to determine if it is still warranted. N.J.A.C. 10A:72-11.4. No such periodic review under SOMA applies to Tier III Megan's Law offenders, although they may apply to terminate their Tier III designation after fifteen years, N.J.S.A. 2C:7-2(f), unless disqualified from doing so, N.J.S.A. 2C:7-2(g).

In determining whether a suspicionless search is an unreasonable one, our Supreme Court eschewed a simple balancing of governmental and personal interests under the totality of circumstances as authorized under the Fourth Amendment. O'Hagen, 189 N.J. at 157-58. Instead, the Court held that our State Constitution requires a more demanding showing that a warrantless, suspicionless search serve a "special need." Ibid.

H.R. and I.R. both contend the trial court erred in finding a special needs search. They argue that the monitoring is a search that is prompted without any suspicion of unlawful activity, and is designed to gather evidence to enforce criminal laws. If they were correct, then the searches would be unconstitutional, because "suspicionless searches are unconstitutional if the immediate purpose is to gather evidence against the individual for general crime control purposes." Id. at 160.

"On the other hand, if the core objective of the police conduct serves a special need other than immediate crime detection, the search may be constitutional." Ibid. The government's "'special needs' beyond normal law enforcement . . . may justify departures from the usual warrant and probable-cause requirements." Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 620-21 (1989) (approving drug testing of railroad employees after major accidents and other circumstances) (quoting Griffin v. Wisconsin, 483 U.S. 868, 873-74

6                                                                                    A-2843-16T3

(1987)). However, the special needs exception does not apply to "a program whose primary purpose is ultimately indistinguishable from the general interest in crime control." City of Indianapolis v. Edmond, 531 U.S. 32, 44 (2000) (finding checkpoint set up to interdict drugs was not a special needs search). In O'Hagen, the court upheld as a special needs search the collection of DNA samples from convicted persons. 189 N.J. at 165. Our Supreme Court has also upheld, as special needs searches, mandatory HIV tests of sex offenders, random drug testing of transit police officers, and random drug and alcohol testing of certain students. Id. at 155-57.

To determine whether the GPS monitoring serves a special need, "[w]e start with the purposes enumerated by the Legislature . . . ." Id. at 158.[4] Plaintiffs focus on the stated purpose to "link released offenders to crimes or to exclude them from ongoing criminal investigations." N.J.S.A. 30:4-123.90(d). They note that the Board and other law enforcement agencies may share "criminal incident information." N.J.S.A. 30:4-123.93.

However, even if "the enumerated purposes may involve law enforcement to some degree," a search qualifies as a special needs search if the

---

[4] Although the Court held that SOMA imposed such punitive consequences as to trigger the ex post facto clause, Riley, 219 N.J. at 297, the Court nonetheless, "[f]or purposes of [its] ex post facto analysis, . . . accept[ed] that the Legislature, in passing SOMA, intended to enact a remedial, regulatory scheme that was civil and nonpunitive in nature," id. at 292.

"central purposes . . . are not intended to subject [the target of the search] to criminal charges." O'Hagen, 189 N.J. at 159. The Legislature's expressed purposes in enacting SOMA include deterrence and rehabilitation. The Act declares, "Intensive supervision of serious and violent sex offenders is a crucial element in both the rehabilitation of the released inmate and the safety of the surrounding community." N.J.S.A. 30:4-123.90(b). GPS monitoring is a "technological solution[]" and can "provide improved supervision and behavioral control of sex offenders following their release." N.J.S.A. 30:4-123.90(c).

An offender is likely to be deterred from engaging in criminal activity that could be verified with monitoring data.[5] See Belleau v. Wall, 811 F.3d 929, 935-36 (7th Cir. 2016) (finding a deterrent purpose in Wisconsin's sex offender GPS monitoring program, and citing study finding that GPS monitoring reduced recidivism by half). Resisting such activity will further an

_____

[5] We recognize that a principal goal of the criminal laws is deterrence. N.J.S.A. 2C:1-2(a)(2). Yet, serving that goal does not convert the monitoring into an instrument principally designed to detect crime or prosecute the monitored subject. O'Hagen, 189 N.J. at 158-61.

offender's rehabilitation.[6]  Furthermore, GPS monitoring serves the additional function of exonerating offenders if it establishes that they were far from the location of a new crime.[7]

In support of his claim that the monitoring is designed principally to gather evidence of criminal behavior, H.R. notes one incident in which his parole officer inquired whether H.R. had left the State.  However, that falls

---

[6]  Our conclusion finds support in the concurring opinion in <u>Belleau</u>:

> Wisconsin's GPS program is also designed to serve a special need.  The program reduces recidivism by letting offenders know that they are being monitored and creates a repository of information that may aid in detecting or ruling out involvement in future sex offenses.  These goals are not focused on obtaining evidence to investigate a particular crime. Information gathered from this program may, at some later time, be used as evidence in a criminal prosecution, but that is not the primary purpose of the program.  Indeed, the program is set up to obviate the likelihood of such prosecutions.

> [<u>Belleau</u>, 811 F.3d at 940 (Flaum, J., concurring).]

[7]  H.R. and I.R. misplace reliance on <u>Ferguson v. City of Charleston</u>, 532 U.S. 67 (2001).  In that case, public hospital employees, in conjunction with police, urine-tested pregnant patients to secure evidence of cocaine use.  <u>Id.</u> at 70. The Supreme Court rejected the idea that the searches were motivated by an interest in patient health.  The Court held the "immediate objective of the searches [in that case] was to generate evidence <u>for law enforcement purposes</u>."  <u>Id.</u> at 83.  That specific law enforcement goal distinguishes those searches from the GPS monitoring in this case.  <u>See</u> <u>O'Hagen</u>, 189 N.J. at 159-60 (distinguishing <u>Ferguson</u>).

A-2843-16T3

short of demonstrating that the program's central purpose is to further law enforcement against him. I.R. contends that the program has no deterrent or rehabilitative effect in his case, as he committed his crime in the privacy of his own home. However, the program also deters I.R. from engaging in other forms of sexual offenses, which he may be susceptible to commit, given his offense history. In sum, plaintiffs have failed to demonstrate, based on the statute's plain language or its actual enforcement, that the central purpose of the GPS monitoring is to assist in criminal investigations.

Once the court is satisfied that a search serves special needs, it must weigh "the privacy interests advanced . . . and any limitations imposed," as well as "the competing governmental need against the privacy interests involved," to determine if it is an "unreasonable search" under Article I, Paragraph 7. O'Hagen, 189 N.J. at 158. The balancing is "fact-specific." N.J. Transit PBA Local 304 v. N.J. Transit Corp., 151 N.J. 531, 548 (1997).[8] The State, in I.R.'s case, and H.R. contend the court erred in its balancing.[9]

---

[8] We do not understand our Court's special needs jurisprudence to require a separate hearing as to the monitoring's reasonableness under Article I, Paragraph 7, in each offender's individual case, as opposed to classes or groups of offenders. Our cases involving other special needs searches have not involved individualized determinations. See, e.g., N.J. Transit PBA Local 304, 151 N.J. at 558-60. By contrast, after the United States Supreme Court's decision in Grady, North Carolina courts have required such individualized "Grady hearings" to determine the reasonableness of GPS monitoring under

(continued)

The monitoring program furthers a significant state interest: the deterrence and prevention of sexual offenses. See Doe v. Poritz, 142 N.J. 1, 89 (1995) ("The state interest in protecting the safety of members of the public from sex offenders is clear and compelling."). The Legislature has found that the risk of recidivism is high for sex offenders. N.J.S.A. 30:4-123.90(a); see also Doe, 142 N.J. at 14-18. As noted, some research discloses a greater-than fifty-percent reduction in recidivism among monitored offenders. We need not determine the precise extent to which offenders re-offend to conclude that any

---

(continued)
the circumstances in each offender's case. See State v. Grady, 817 S.E.2d 18, 23 (N.C. Ct. App. 2018) (Grady II).

[9] Plaintiffs assert that separate from such balancing, the privacy interests must be "minimal," citing State ex rel. J.G., 151 N.J. 565, 577 (1997), which in turn quotes the Court's statement in Skinner, 489 U.S. at 624: "In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important government interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." (Emphasis added). However, the Court has found suspicionless intrusions that "were not minimal," such as compelled urine testing, were justified when balanced against governmental interests. N.J. Transit PBA Local 304, 151 N.J. at 551, 558-60. We do recognize GPS monitoring is more intrusive than compelled urine testing. Yet, that fact simply weighs in the balancing, requiring a more substantial countervailing governmental need to survive constitutional scrutiny.

A-2843-16T3

significant reduction furthers a governmental interest in protecting their potential victims.[10]

Turning to the offender's privacy interests, we decline the State's suggestion that we follow Belleau, wherein both Judge Posner, writing for the court, and Judge Flaum, concurring, concluded that GPS monitoring did not violate the Fourth Amendment rights of a seventy-two-year-old offender who had long ago completed his sentence and was not on parole, but who was subject to Megan's-Law-type registration and disclosure. Judge Posner's view that the loss of privacy suffered under GPS monitoring is slight, Belleau, 811 F.3d at 932-33, is at odds with our Supreme Court's assessment in Riley that GPS monitoring substantially diminishes individual privacy. 219 N.J. at 295-96.

Judge Flaum is not so dismissive of GPS monitoring's impact, stating the privacy interest is "strong," and monitoring is "uniquely intrusive, likely more intrusive than any special needs program upheld to date by the Supreme Court." Belleau, 811 F.3d at 940 (Flaum, J., concurring). The judge quotes

---

[10] We recognize some academics question the premise that sexual offenders pose heightened risks of recidivism. See generally Ira Mark Ellman & Tara Ellman, "Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics, 30 Const. Comment. 495 (2015). However, we are bound by our Court's acceptance of the premise that sexual offenders pose special risks of recidivism. Doe, 142 N.J. at 15.

Justice Sotomayor's statement that "GPS monitoring – by making available at a relatively low cost such a substantial quantum of intimate information about any person whom the Government, in its unfettered discretion, chooses to track – may 'alter the relationship between citizen and government in a way that is inimical to democratic society.'" Id. at 939 (quoting United States v. Jones, 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring) (quoting United States v. Cuevas-Perez, 640 F.3d 272, 285 (7th Cir. 2011) (Flaum, J., concurring))).

Yet, the judge hypothesizes that GPS monitoring technology may improve, lessening its physical intrusiveness and conspicuousness.[11] Ibid. Also, he notes that GPS monitoring is less invasive than custodial forms of supervision. Ibid. However, we are presented with the use of monitoring as applied in the record before us, to ex-offenders who have completed their custodial sentences.

Balancing the State's substantial interests against plaintiffs' privacy interests, we agree with Judge Innes that the critical distinction between the two cases presented is the offender's parole status, and its impact on his expectation of privacy. H.R. was sentenced to parole supervision for life. GPS monitoring under SOMA "is essentially parole supervision for life by

---

[11] On the other hand, technological improvements may also expand intrusiveness in other respects, by gathering more detailed data about the monitored subject.

another name." Riley, 219 N.J. at 275.[12] Parole supervision already severely diminishes H.R.'s privacy and personal autonomy. See Samson v. California, 547 U.S. 843, 848-52 (2006) (taking into consideration a parolee's diminished reasonable expectation of privacy); J.B. v. N.J. State Parole Bd., 433 N.J. Super. 327, 337 (App. Div. 2013) ("Rather than being an ad hoc exercise of clemency, parole is an established variation on imprisonment of convicted criminals.") (quoting Morrissey v. Brewer, 408 U.S. 471, 477 (1972)). PSL subjects H.R. to polygraphs, curfews, travel restrictions, face-to-face visits, limitations on travel, and searches of his home, vehicle and person based on reasonable suspicion. N.J.S.A. 2C:43-6.4(f); N.J.A.C. 10A:71-6.12(d); see also J.B. v. N.J. State Parole Bd., 229 N.J. 21, 41 (2017) (holding that the State's interest in conducting polygraph examinations of PSL-parolees outweighs parolee's privacy interest in the information the examination secures).

I.R. enjoys a greater expectation of privacy than H.R. No doubt, he already suffers an intrusion into his privacy as a Megan's Law registrant. See Doe, 142 N.J. at 84-85 (recognizing that registration and notification affects

---

[12] In the context of its ex post facto analysis, the Riley Court stated, "We do not suggest that GPS monitoring may not be added as a condition of parole supervision that is ongoing – that is, while the offender is still serving his sentence." 219 N.J. at 290.

privacy interests, notwithstanding the public nature of conviction and address information); see also J. Bryan Boyd, Tracking Reasonableness: An Evaluation of North Carolina's Lifetime Satellite-Based Monitoring Statutes in the Wake of Grady v. North Carolina, 38 Campbell L. Rev. 151, 205 (2016) (suggesting that "a sex offender's privacy rights are more diluted than other felons" in part because of notification and registration laws). I.R. also suffers disabilities as an ex-offender. See Green v. Berge, 354 F.3d 675, 680 (7th Cir. 2004) (Easterbrook, J., concurring) (contrasting the gradually increasing liberty interests of prisoners, parolees, felons who have served their sentence and persons never convicted, and stating that "[w]hat is 'reasonable' under the fourth amendment for a . . . felon, may be unreasonable for the general population"). However, but for SOMA, I.R. would be free of supervision and surveillance by the Board.[13]

We conclude the continuous nature of the suspicionless surveillance under SOMA distinguishes it from episodic suspicion-based and other intrusions to which a PSL-parolee is otherwise subject. Nonetheless, we are

---

[13] We recognize that after I.R. committed his offense, the Legislature amended the PSL statute to require PSL in certain child pornography offenses, and to render other such offenses PSL-eligible, upon a prosecutor's request and a judicial finding. L. 2013, c. 136; N.J.S.A. 2C:43-6.4(a). Consequently, a person who replicated I.R.'s offense after 2013 could be sentenced to PSL, and would become subject to GPS monitoring under our analysis.

convinced, as was the trial court, that the balance favors the State in H.R.'s case. As H.R.'s expectation of privacy is already limited, the substantial impact on his protected privacy interests is outweighed by the government's greater interest in deterrence and rehabilitation. On the other hand, I.R. completed his sentence and is not subject to continuing parole supervision. Under I.R.'s circumstances, we conclude that GPS monitoring is an unreasonable search.[14]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[14] Our conclusion finds some measure of support in Grady II, wherein the court held that GPS monitoring was unreasonable in the case of an unsupervised offender. 817 S.E.2d at 28. The court placed great weight on the state's failure to present evidence on how monitoring the defendant in particular would further its interests, and how the defendant posed a "current threat of reoffending." Id. at 26-27. On the other hand, I.R.'s risk has been established by the prior Tier III finding.